IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**SUMIE CLARK**  **Plaintiff**

**v.**  **CIVIL ACTION NO.: 3:14-cv-00204-MPM-JMV**

**BOYD TUNICA, INC., d/b/a SAM'S**
**TOWN HALL and GAMBLING HALL**  **Defendant**

**MEMORANDUM OPINION**

This matter comes before the Court for consideration on the *Motion for Summary Judgment* [50] and accompanying *Memorandum in Support* [51] (collectively, the "Motion"), filed on August 18, 2015, on behalf of defendant Boyd Tunica, Inc. (the "Defendant). On September 15, 2015, plaintiff Sumie K. Clark (the "Plaintiff") filed her *Response in Opposition to Defendant's Motion for Summary Judgment* [57] and related *Memorandum in Opposition* [56] (collectively "the Response"). Thereafter, on September 24, 2015, Defendant filed its *Reply Memorandum in Support of Motion for Summary Judgment* (the "Reply") [58]. The Court has considered the Motion, the Response, and the Reply, as well as other relevant filings and case law, and determines that summary judgment is appropriate.

**I. JURISDICTION**

Plaintiff is a resident of Tunica, Mississippi. Defendant does business as Sam's Town Hotel and Gambling Hall in Tunica, Mississippi, but is a Nevada corporation. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343.

**II. FINDINGS OF FACT**

The following is a concise summary of undisputed facts as presented by the parties.

Plaintiff was hired by the Defendant, d/b/a Sam's Town Hotel and Gambling Hall, in August 1997 as a line cook. From 1999 to 2006, she worked at Hollywood Casino, before returning to Sam's Town in 2006 as a specialty room chef.

Defendant had a policy entitled, "Substance/Alcohol Abuse and Drug Testing," whereby employees were subject to drug tests following an on-the-job injury or illness requiring medical attention. Employees who tested positive were

On August 17, 2013, Ms. Clark tripped over a pipe near a sink, twisted and fractured her right ankle, and was taken to a nearby clinic for treatment. At the clinic, she was given an x-ray and told she had a fractured ankle. Pursuant to the Defendant's Substance/Alcohol Abuse and Drug Testing policy, the clinic also obtained blood and urine samples for testing by testing facility Quest Diagnostics ("Quest").

On August 21, 2013, Quest reported that the testing of Ms. Clark's urine sample was positive for alcohol at the level of .12 %, which was above the designated cutoff level for the screening, and also above the legal limit for the State of Mississippi. However, the testing of the blood sample was negative for alcohol.

Defendant's management contacted Ms. Clark about the results and asked her to provide information about all medication she had been taking to determine if anything she was taking could have created a false positive. The information was submitted to Quest, who in turn informed management that Ms. Clark's medication would have no effect on the test results, that the urine test for alcohol was more accurate than the blood test, and that the test result showing alcohol was accurate.

On September 25, 2013, while out on medical leave, Ms. Clark's employment was terminated. Defendant asserts that Ms. Clark was terminated for violating the company's zero-tolerance policy regarding substance use while on the job.

On September 18, 2014, Ms. Clark filed suit with this Court, alleging that her employment had been wrongfully terminated. She contends that any test showing alcohol in her system at the time of the injury was inaccurate and/or false, as she does not drink alcohol. Rather, Ms. Clark posits that medication she takes for diabetes could have impacted the accuracy of the results. Further, she contends that the real reason for her termination was that she was disabled (as a result of the workplace ankle injury) and could not work, and that her termination was therefore in violation of the ADA and ADAAA.

### III. CONCLUSIONS OF LAW

Rule 56(a) of the Federal Rules of Civil Procedure requires that a court grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 2665 (1986). The non-moving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) *(en banc)*. When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.

Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000). Rather, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

"The ADA prohibits an employer from discriminating against a 'qualified individual with a disability on the basis of that disability.'" *E.E.O.C. v. LHC Grp., Inc.,* 773 F.3d 688, 694 (5th Cir.2014) (quoting 42 U.S.C. § 12112(a)). In order to make a claim under ADA/ADAAA, the plaintiff bears the burden of establishing that he or she qualifies for protection under ADA/ADAAA provisions, and that some unlawfully discriminatory action took place. "When a plaintiff can offer only circumstantial evidence to prove a violation of the ADA, this court applies the *McDonnell Douglas* burden-shifting framework." *E.E.O.C. v. Chevron Phillips Chem. Co., LP,* 570 F.3d 606, 615 (5th Cir. 2009) (referencing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Under this framework, the plaintiff must make a *prima facie* showing of discrimination. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226-27 (5th Cir. 2015).

As both parties accurately recite in their filings, a plaintiff attempting to establish a prima facie case for discrimination under the ADA must surmount a three-part threshold test. "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *LHC Grp., Inc.*, 773 F.3d at 697. As the elements are written and applied in the conjunctive, a plaintiff must succeed on all parts in order for their claim to survive. However,

> [o]nce the plaintiff makes his *prima facie* showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the

evidence that the articulated reason was merely a pretext for unlawful discrimination.

*McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 280 (5th Cir. 2000)

Further, to avoid summary judgment, a plaintiff must show that either "(1) [she] could 'perform the essential functions[1] of the job in spite of [her] disability,' or, if she could not, (2) that 'a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job.'" *LHC Grp., Inc.*, 773 F.3d at 697 (citing *Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1093 (5th Cir.1996) (per curiam) (citing the ADA, 42 U.S.C. § 12111(8), which defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position ...")).

**A. Plaintiff Must Have a Disability**

Pursuant to 42 U.S.C. § 12102(A) – (C), "[t]he term 'disability' means, with respect to an individual--

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment (as described in paragraph (3)).[2]

Under the ADAAA, the definition of "disability" is construed in "favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

---

[1] A function is "essential" if it bears "more than a marginal relationship" to the employee's job. *Chandler v. City of Dall.,* 2 F.3d 1385, 1393 (5th Cir. 1993), *holding modified on other grounds as discussed in Kapche v. City of San Antonio,* 304 F.3d 493 (5th Cir. 2002) (per curiam).

[2] As 42 U.S.C. § 12102 is written in the disjunctive, Plaintiff may succeed on the first element of her prima facie case by proving any of the three possible definitions for "disabled."

5

### 1. Physical or Mental Impairment that Substantially Limits One or More Major Life Activity

> The term "substantially limits" means: (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Hutson v. Covidien, Inc.*, 654 F. Supp. 2d 1014, 1020-21 (D. Neb. 2009) (citing 29 C.F.R. § 1630.2(j)). "Major life activities" are statutorily defined as including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

The parties are, unsurprisingly, in disagreement over whether or not Ms. Clark was "disabled" such that she may seek protection under the ADA and ADAAA. Defendant alleges in the Motion, that "[i]n the instant case, Plaintiff suffered a non-displaced fracture to her ankle with no complications, was able to walk unassisted in regular shoes after approximately two months and was independently ambulatory and considered fully healed in approximately four months." [51]. The Defendant urges this Court to follow fellow district courts who have concluded, in short, that short term or temporary injuries or disabilities do not render an individual disabled within the meaning of the statute. *See, e.g., Martinez v. N.Y. State Div. of Human Rights*, 2015 WL 437399, at *7 (S.D.N.Y. Feb. 2, 2015); *Mastrio v. Eurest Servs., Inc.*, 2014 WL 840229, at*4 (D.Conn. Mar. 4, 2014); *Budhun v. Reading Hosp. and Medical Center*, 2011 WL 2746009, *2 -3 (E.D. Pa. July 14, 2011).

Conversely, the Plaintiff directs this Court to cases which have concluded that under the ADAAA, "an impairment is not categorically excluded from being a disability simply because it

is temporary." *Summers v. Altarum Institute, Corp.*, 740 F.3d 325, 333 (2nd Cir. 2014). *See also Hodges v. District of Columbia*, 959 F. Supp. 2d 148, 154 (D.D.C. 2013) (holding that, "in passing the ADAAA, Congress rejected restrictive judicial interpretations of the term 'substantially limits,' *see* ADAAA § 2(b), and the post-amendment regulations make clear that '[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting.'" (citing 29 C.F.R. § 1630.2(j)(1)(ix))).

According to the Plaintiff's recitation of events:

> [Plaintiff's doctor] confirmed Clark had a fractured ankle. [Plaintiff's doctor] recommended, "off work, bed rest, elevation, walker, no driving, boot." Clark was not able to walk until December 2013, four months later. Clark was not completely ambulatory until December 30, 2013. However, she was still only allowed to stand or walk for a maximum of thirty (30) minutes per hour. Clark was a chef, which requires her to be on her feet during her entire work shift, often fifteen (15) hours a day, six (6) days a week. Clark was not cleared to resume regular work duties until January 14, 2014, almost five months after the injury.

Accepting the Ms. Clark's timeline of events, as well as the fact that she was injured (a fact neither party appears to dispute), one may conclude that her major life activities (such as walking and/or standing) were impaired to some degree or another. The issue remains, however, whether such physical impairment "substantially limited" her major life activities. "Though 'substantially limits' is not meant to be a demanding standard, '[n]ot every impairment will constitute a disability within the meaning of this section.'" *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 513 (E.D. Pa. 2012) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)); *Chevron Phillips*, 570 F.3d at 614. In determining whether an individual is substantially limited in a major life activity, courts should consider: "(I) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Chevron Phillips*, 570 F.3d at 614 (citing 29 C.F.R. § 1630.2(j)).

7

Although this Court accepts that a temporary injury – by itself – is not categorically precluded from qualifying as a disability, it also accepts the standard that "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." 29 C.F.R. § 1630.2(j). *See also Pryor v. Trane Co.,* 138 F.3d 1024, 1026 (5th Cir. 1998) (same). Rather, temporary impairments *may be* covered only if sufficiently severe. *Summers*, 740 F.3d at 329. Examples of temporary, non-disabling impairments include: "broken limbs, sprained joints, concussions, appendicitis, and influenza." 29 C.F.R. § 1630 app., § 1630.2(j).

Considering the nature and severity of the injury, the duration or expected duration of the impairment, and the actual or possible long term impact, the Court finds that Ms. Clark's injuries did not substantially limit her major life activities to the degree necessary to maintain a prima facie case for an ADA violation. First, the nature and severity of the broken foot was not (assuming the Ms. Clark's account of events) of a particularly egregious or debilitating nature. The course of treatment purportedly proscribed by Plaintiff's doctor was not, by normal standards, unreasonable for what one might expect from a broken foot.[3] By Ms. Clark's own deposition admission, she was cleared to return to work (at an admittedly demanding job which required her to be on her feet for hours at a time) within 5 months' time of the accident. On this point, she has failed to demonstrate that her injury and the resulting impairment were anything out of the ordinary for a broken bone. Second, as already pointed out, the duration of the impairment was less than five months. Although it is true that an injury lasting less than six months *may* still be considered to be substantially limiting, Ms. Clark has failed to demonstrate

---

[3] The Court notes that the plaintiff has in fact only submitted one, single-paged medical record from her doctor, which simply states that Plaintiff suffered from a fractured ankle and should remain off of work and on bed rest while her ankle healed. [57, Ex. 18]. The form record also suggested "elevation, walker, no driving, boot" as a course of treatment. No other substantive medical information is provided. Any other information regarding the severity of her injury, as well as the recovery, has been taken from her own deposition testimony.

8

that her case is one such exception to the general standard. Again, she has failed to submit evidence that the break was particularly severe as compared to similar injuries, such that the six-month general threshold should be ignored. Also, there is no evidence that (nor does the Plaintiff herself appear to contend) that there exists any permanent or long term impact. By all accounts the injury has fully and successfully healed, and there are no claims or indications that there will be any long term impact.

The evidence presented in this case (even when read in a light most favorable to the Plaintiff) simply does not rise to the level of showing that Ms. Clark's impairment substantially interfered with major life activities so as to qualify her as disabled. The submitted depositions of the Plaintiff's co-workers and supervisors, coupled with Ms. Clark's job evaluations, paint a picture of a hard-working and diligent employee. [57, Ex. 4, 5, 6, 7, 8, 9, 10, 11]. The evidence does not, however, show that her injury was severe to the point of substantially interfering with major life activities. Instead, Ms. Clark's evidence is almost entirely directed towards establishing that she was not under the influence at the time of the accident, and/or that she refrained from using alcohol at all. While that may or may not be true, that is an entirely different inquiry than whether Ms. Clark was disabled as a result of her injury.[4] Lacking from the evidentiary submissions are any substantive medical records or reports from which the Court might infer a dispute as to the severity of the injury. The Plaintiff has only submitted one, single-paged, general medical form, stating that she has a fractured ankle and that her doctor suggested rest while she recovered. [57, Ex. 18]. Such narrow and insubstantial medical evidence is hardly sufficient to prove ADA disability. *See Reynolds v. American Nat. Red Cross*, 701 F.3d 143, 152 (4th Cir. 2012) (employee did not demonstrate that he was substantially

---

[4] Although the question of Plaintiff's state of sobriety or intoxication may be relevant to the question of Defendant's cause for firing the Plaintiff, this Court does not reach that question without first determining whether Plaintiff has made a prima facie case for discrimination.

limited in a major life activity where the only medical evidence that employee presented was a three-page medical report from physician and physician testified that he did not believe the employee to be disabled).

Further, the case law on the issue simply does not support the legal conclusion that a broken foot – which by all accounts healed in the normal course – qualifies as a disability which substantially limits ones major life activities. *See, e.g.,*; *Kruger v. Hamilton Manor Nursing Home*, 10 F. Supp. 3d 385, 389 (W.D.N.Y. 2014) (employee's broken arm was insufficient to plead a disability under the ADA); *Zick v. Waterfront Comm'n of N.Y. Harbor,* 2012 WL 4785703, at *5, (S.D.N.Y. Oct. 4, 2012) ("[p]laintiff's broken leg is simply not an injury considered a 'disability' under the ADA."); *Smith v. Reg'l Plan Ass'n, Inc.,* 2011 WL 4801522, at *5, (S.D.N.Y. Oct. 7, 2011) (plaintiff's fractured ankle did not qualify as a disability within the meaning of the ADA); *George v. TJX Cos.,* 2009 WL 4718840, at *6–7 (E.D.N.Y. Dec. 9, 2009) (broken arm does not qualify as a disability under the ADA); *Hutson*, 654 F. Supp. 2d at 1022 (employee's numerous injuries over the years, including a broken neck, did not qualify him as disabled for ADA purposes as they were determined to be only somewhat limiting and not substantially limiting); *Guary v. Upstate Nat'l Bank,* 618 F. Supp. 2d 272, 275 (W.D.N.Y. 2009) (plaintiff's broken ankle, "which resulted in a single, twelve-week disability leave with no alleged physical limitations thereafter, is not a disability for purposes of the ADA..."); *Pollard v. High's of Baltimore, Inc.,* 281 F.3d 462, 468–69 (4th Cir. 2002) (recuperation from back surgery was a temporary impairment that did not qualify as a substantially limiting disability under the ADA).[5]

---

[5] The Court acknowledges an unusual reliance on, or reference to, out-of-state district court opinions (more particularly, New York). Lacking any factually analogous cases from within this Circuit, however, the Court considers the rulings of its sister courts, and finds the legal analysis persuasive, even if not binding.

The Court would be remiss to not point out that the Plaintiff has failed to highlight any cases in which a comparable injury was held to qualify as a disability for ADA purposes. Those cases in which temporary impairments were found to constitute ADA disabilities tend to be of a reoccurring or on-going nature, which does not appear to be the case here. *See, e.g., Carmona v. Southwest Airlines Co.*, 604 F.3d 848, 855 (5th Cir. 2010) (holding that the ADAAA "make[s] it easier for a plaintiff with an *episodic* condition ... to establish that he is an individual with a disability") (emphasis supplied; internal cite omitted).

Accordingly, for the aforementioned reasons, the Court finds that Ms. Clark has failed to show that her injury caused a physical impairment which substantially interfered with her major life activities.

### 2. Record of Impairment or Regarded as Having a Disability

Having established that Ms. Clark has not shown that she suffers from a physical or mental impairment that substantially limits one or more major life activities, the Court considers the other two means by which she may be considered "disabled."

First, it is not necessary to adjudge whether Ms. Clark qualifies has having a record of any impairment, as neither party suggests that may be the case.

Second, this Court considers whether the Plaintiff is "regarded as having a disability" so as to fall under the protections of 42 U.S.C. § 12102(1)(C). Pursuant to 42 U.S.C. § 12102(3)(A),

> [a]n individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

Under subsection (B), however, the ADA explicitly states that the "regarded as" definition "shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B). "Whether an impairment is 'transitory and minor' is to be determined objectively." *Budhun*, 765 F.3d at 259 (citing 29 C.F.R. § 1630.15(f)).

As stated above, Plaintiff was cleared to resume regular work duties approximately five months after the accident. There is also no indication that Ms. Clark and/or her doctors expected the injury to last more than six months, thereby qualifying the injury (and the impairments caused thereby) to qualify as a "transitory impairment with an actual or expected duration of six months or less."

Furthermore, broken bones, generally, are characterized as being "transitory and minor" for purposes of ADA disability definitions. *See, e.g., White v. Interstate Distributor Co.*, 438 Fed.Appx. 415, 420 (6th Cir. 2011) (employee who fractured leg but was expected to heal in a matter of months was not and could not be considered to be "regarded as disabled" because the impairment was transitory and therefore statutorily precluded); *Kruger*, 10 F. Supp. 3d at 390 (employee's allegations that she broke her arm and that employer regarded her as disabled were insufficient to state a claim under the ADA against employer); *Zick,* 2012 WL 4785703, at *5 (S.D.N.Y. Oct. 4, 2012) (plaintiff who sustained a broken leg suffered a "minor" or "transitory" injury, and therefore was not regarded as having an ADA-covered disability); *Smith,* 2011 WL 4801522, at *5 (plaintiff who sustained a fractured ankle did not plead "facts adequate to show that her employers perceived her as disabled" because she merely offered "the conclusory statement that 'Defendants perceived Plaintiff as a disabled person' ... [t]hat formulaic recitation

of an element of her cause of action will not do under *Twombly*…") (citing *Bell Atlantic Corp. v. Tombly*, 550 U.S. 1955, 545, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007)).

### B. Plaintiff Qualified for Job and Subject to Adverse Employment Decision

Given that the elements for making a prima facie case for discrimination are written in the conjunctive, a plaintiff must establish each element to prevail. As Ms. Clark has failed to demonstrate that she suffered from a qualifying disability, the Court need not – and declines to, in the interest of judicial economy – delve into an analysis of the remaining elements of a prima facie case for discrimination. To put it simply, after the Plaintiff fails to demonstrate that she qualifies as disabled (under any definition), all other arguments for making a prima facie case are rendered moot. A claim predicated on ADA/ADAAA protections simply cannot survive.

### C. Defendant's Non-Discriminatory Reason for Termination

Even if Ms. Clark were able to establish a prima facie case of discrimination because of disability, real or perceived, Defendant has still sufficiently demonstrated a legitimate, non-discriminatory reason for termination so as to render summary judgment appropriate. The evidence presented by the Defendant shows that all Sam's Town employees who tested positive for alcohol while on the job were terminated. [50, Ex. 9, pg. 39-41]. Employees were notified through their employee manual that they may be subject to such adverse action if they failed an alcohol test while on the job. [50, Ex. 5]. Federal Courts have consistently held that a failed drugs test is a legitimate, nondiscriminatory reason for adverse employment action. *See, e.g., Raytheon Co. v. Hernandez*, 540 U.S. 44, 53, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003) (positive drug test served as legitimate basis for employment decisions); *Bailey v. Real Time Staffing Services, Inc.*, 543 Fed.Appx. 520, 524 (6th Cir. 2013) (affirming district court holding that "[t]ermination for failing a drug test is a legitimate, nondiscriminatory reason for terminating an

employee."); *Keys v. Foamex*, 264 Fed.Appx. 507, 513 (7th Cir. 2008) (positive drug test, administered pursuant to employer's drug policy, provided legitimate, nondiscriminatory reasons for termination).

To withstand summary judgment once a defendant has shown a legitimate, nondiscriminatory reason for adverse employment action, the burden shifts back to the plaintiff to come forward with evidence that the defendant's stated reason is pretextual. *McInnis*, 207 F.3d at 280 (holding that once an employer articulates a nondiscriminatory reason for adverse employment action, "the burden then shifts back to the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination). Although Ms. Clark maintains that the alcohol test showed a false positive, exploration of the accuracy of the test is unnecessary as "[e]ven if the positive result was in fact false, an employer's reliance on an erroneous result does not create a claim under the ADA absent an independent showing that the real reason for the firing was a disability." *Bailey*, 543 Fed.Appx. at 524. The idea that the positive drug test was only a pretext for discriminatory action is even further undercut by Ms. Clark's own admissions and evidence, whereby it was shown that the Defendant declined to take adverse action until such time as it could be determined that Ms. Clark's medication would not have caused a false positive. Rather than serve as a pretext for discrimination, it appears that Defendant's managers attempted to give Ms. Clark the benefit of the doubt, taking the time to confirm that there could not be some other explanation for the positive test results. [57, Ex. 1, 23, 24]. Accordingly, even if the Plaintiff had been able to establish a prima facie case, Defendant is more than adequately able to show a legitimate, non-discriminatory, basis for its action. Defendant's burden having been met, Ms. Clark has quite

simply presented no evidence that might lead one to believe or suspect that the reason given is merely a pretext for discrimination.

## IV. CONCLUSION

There is no question, either in the law or between the parties, that a plaintiff attempting to establish a prima facie case for discrimination under the ADA must overcome a three-part threshold test. "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *LHC Grp., Inc.*, 773 F.3d at 697. Despite reading and applying the evidence in the light most favorable to the Plaintiff as the non-moving party, the Court still concludes that there is a complete absence of evidence that Ms. Clark establish that she is disabled. Accordingly, Ms. Clark fails to make out a prima facie case. Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. Because the Plaintiff has failed to demonstrate that she is disabled for ADA purposes – an element essential to her case and on which she will bear the burden of proof at trial – the Court has no choice but to conclude that summary judgment is appropriately granted. Furthermore, even if Ms. Clark had adequately pleaded a case for discrimination, Defendant has submitted sufficient evidence of a legitimate, non-discriminatory reason for the adverse employment action, thereby shifting the burden back to Ms. Clark to show that the given reason was merely a pretext for discrimination. On this point, the Plaintiff has again fallen short of meeting her burden, thereby proving that summary judgment is appropriate and unavoidable. Accordingly, it is hereby,

ORDERED that the Motion for Summary Judgment [50] is GRANTED and the case DISMISSED.

A separate judgment will be entered on this date, pursuant to Federal Rule of Civil Procedure 58.

SO ORDERED this the 1st day of March, 2016

/s/ **MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**